*Beacom, Baker, Payer, Gage & Carey* and *Blandin, Rice & Ginn,* for defendants.

---

### INJURY FROM A DEFECTIVE CAR COUPLING.

[Circuit Court of Harrison County.]

## P., C., C. & St. L. Ry. Co. v. Fred. A. Stone.*

Decided, November Term, 1900.

*Railways—Negligence—Personal Injuries—Defective Car Coupling— Brakeman Having no Knowledge of Its Condition is Injured—Presumption of Negligence—Cases Involving Doubtful Circumstances or Conflict in the Testimony Should be Submitted to the Jury Under Proper Instructions.*

1. Presumption of knowledge of a defect in a car coupling, both before and at the time of an injury to an employe having occasion to couple the car to a train, is chargeable to the railroad company; and this presumption can not be overcome by proof of facts which tend to raise the presumption that the company did not have such knowledge.

2. A presumption of contributory negligence does not arise as to a brakeman injured while attempting to make a coupling with such a

---

*Affirmed by the Supreme Court, without report, December 9, 1902.

car in the night time, with no knowledge of the defect, or of the presence of other cars on the same track immediately in the rear, which the defective car in case of failure to couple would strike, causing a rebound, and in consequence of such rebound the injury occurs.

3. If the testimony as to an accident is conflicting, and the circumstances such that different minds may arrive at different conclusions as to where the fault lay, the case should be submitted to the jury under proper instructions.

VOORHEES, J.; FRAZIER, J., (sitting in the place of Laubie, J.), concurs; BURROWS, J., absent.

The plaintiff's action was for personal injury sustained on or about November 20, 1897, while he was employed by the defendant company, plaintiff in error, as brakeman on one of its freight trains, the accident occurring in the yards at Collier's Station, West Virginia.

Two ground of negligence of the company are charged as a cause of action, which are:

First. That the appliances for coupling on the caboose, attached to the train on which plaintiff was employed at the time, were defective.

Second. That loaded cars were left standing on the track upon which the caboose with other cars of the train were switched, at the time of the accident, in such position that the caboose and train on which plaintiff was engaged in attending to his duties as brakeman, would be likely to collide with them and cause the injury, and in negligently and wrongfully forcing said caboose back against said cars as was done.

The defendant company by answer denies its liability for the injury thus sustained: (1). That it was not negligent in its duty to plaintiff in any act, or omission of duty, whereby injury resulted to the plaintiff. In other words, it denies all the material allegations of the petition upon which liability of the company is predicated, as set forth in the petition. (2). That the injuries sustained by plaintiff were caused by his own negligence, and without any fault on the part of the defendant.

The plaintiff by reply denies that his injuries were caused by any fault or negligence on his part.

The cause was tried at the February Term, 1900, of the court of common pleas of this county, to a jury, resulting in a verdict for the plaintiff in the sum of $5,250.

Motion for a new trial was filed and overruled, and a bill of exceptions containing the evidence was allowed and filed, and by petition in error the cause comes into this court for review.

A number of grounds of error are assigned as reasons for the reversal and setting aside the judgment. All the assignments of error are not specially pressed in argument, but the principal reasons urged by plaintiff in error are:

1. That the verdict is not sustained by the evidence and is contrary to law.

2. That the verdict is not sustained by any evidence.

3. That the court erred in its charge, and in refusing to charge as requested.

To state the contention more concisely, the plaintiff in error contends that the plaintiff below failed to show any negligence on the part of the company which resulted in or caused his injury; that from the evidence, as shown by the record, the negligence of the defendant in error was the direct and proximate cause of his injury. The questions will be considered in this order.

Was the company guilty of negligence?

The only negligence to be considered is, that the appliances for coupling on the caboose were defective. The ground of negligence on the part of the company by placing or permitting loaded cars to be on the track or switch when the accident occurred, was eliminated from the case at the trial, so far as furnishing a ground for recovery for negligence on the part of the company; and the court instructed the jury that they could not consider it for the purpose of predicating a recovery. But the ground of recovery was based upon the defective coupling on the caboose, and the negligence of the conductor in reference thereto, and in not giving notice to plaintiff of the presence of these loaded cars on the track.

This narrows the inquiry and issue as to negligence on the part of the company to the defective car, and to the negligence

of the conductor in the particulars above mentioned.

The defect in the caboose complained of is that the coupling was too low. The standard height of draw-bars on unloaded cars was 34½ inches. There is evidence in the record that the draw-bar on the caboose when measured in March, 1898, a few months after the accident, was 31½ inches on each end from the top of the rail, and the conductor testified that they had had trouble with it in this regard from the time it came out of the shop in September, 1897. Immediately after the accident other employes of the company, in order to couple this caboose with the car plaintiff had attempted to couple it with when hurt, had to wedge up the draw-bar on the caboose, and without so wedging it up the link in the draw-bar would not work or connect. When Stone attempted to make the coupling he failed for the same reason. The cars having come together without coupling and the engine having been detached, it was necessary for him to get upon the platform of the caboose to give the cars slack, or to separate them, in order that the coupling could be made. If this coupling had not been defective in the particulars mentioned, he could, as claimed by him, have made the connection in the first instance and without danger or harm to him.

In the trial of a personal injury case against a railroad company for injuries caused by defects in its cars, locomotives and machinery, or their attachments, the defects so causing injury are *prima facie* evidence of negligence on the part of such corporation; and by force of the statute of April 2, 1890, Section 3365-21, Revised Statutes, the burden is thrown upon the company to show by proof that it has used due diligence, and is not guilty of negligence. *Railway Co.* v. *Erick*, 51 Ohio St., 146.

In view of the provisions of this statute and the decision above cited, the fact that the defect in the coupling existed, the company is presumed to have knowledge of it. The presumption of knowledge of the defect, both before and at the time of the injury, is chargeable to the company; and this presumption can not be overcome by proof of facts which only raise a presumption that the company did not have such knowledge.

Competent and careful inspectors are presumed to properly inspect the cars and their attachments, but such presumption would not overcome the presumption of knowledge of defects before and at the time of the injury.   It would take an actual and proper inspection or its equivalent to overcome the presumption of knowledge of such defects.

It is contended that there was no actionable negligence on the part of the railway company; that the coupling complained of was not the immediate cause of the injury to the plaintiff. The liability of the company really turns upon this question. The evidence certainly tends to show that from the time this caboose came from the shop, and on up until the time of the accident, it had given trouble to the crew operating the train to which it was attached, with knowledge of the conductor; and immediately after the accident the draw-bar on the caboose had to be wedged up before a coupling could be made with the car next to it.   The plaintiff claims he did not know or have any knowledge of the defective condition.   The conductor, although he knew of the defect, did not tell the plaintiff of it when he was about to make the coupling on the occasion of the accident.   Therefore we think the jury was warranted in finding that there was negligence on the part of the company, through its officers, agents and conductor, in using this defective caboose.

It is also claimed that the plaintiff was guilty of contributory negligence; that he should have seen and known of this defect, having anticipated the difficulties resulting therefrom, when he attempted making this coupling on this occasion, and if he did not know it it was negligence on his part.

Briefly referring to the situation and circumstances surrounding the plaintiff at the time he received his injury, it will appear that he was directed by the conductor to make the coupling on track No. 19, on which track there were loaded cars standing without his knowledge.   It was in the night season, between ten and eleven o'clock; the yards at Collier were unlighted; the only lights available were the lanterns of the train crews and the headlights of the locomotives.   The conductor of the train on which the plaintiff was employed knew

of these cars standing on track No. 19; he saw them that night and before the accident occurred to the plaintiff; he knew the position of the plaintiff on the caboose and the purpose for which he was there; he knew the engine had been detached from the moving cars that were to be coupled with the caboose; he knew of the trouble and defect of the coupling appliances of the caboose; he knew of the threatened danger by reason of the presence of these loaded cars on the same track, yet, without any warning of the danger or signal to plaintiff that the engine had been cut loose, he orders him to make the coupling that plaintiff attempted to make when injured. When the cars that were cut loose from the engine came in contact with the caboose, by reason of the defect in the draw-bar they failed to connect or couple. The plaintiff then got upon the platform of the caboose to loosen the brake to give slack to the cars, to enable him to make further effort to secure the coupling, and while in the act of placing the pin in its place to make the coupling, the caboose collided with the standing loaded cars and in its rebound the hand of the plaintiff was crushed.

It is shown by testimony in the record that in getting upon the platform to give slack to the cars and caboose that had come together when the coupling failed, he did what was usual and customary under such circumstances, and it was done in the ordinary way. Some of the witnesses testified that this is the usual and ordinary way of coupling cars situated as these were. The jury, of course, found that he was not guilty of any contributory negligence in this respect, and we do not see anything in the testimony that should lead us to disturb the verdict for that reason.

It is contended by the company that the plaintiff was negligent in attempting to couple the cars from the platform. It is not negligence *per se* on the part of a brakeman to uncouple cars while the cars are in motion when it is necessary to have them in motion to get the proper slack to enable the brakemen to do the work. *Toledo, C. & C. Ry. Co.* v. *Frick*, 8 Circ. Dec., 28.

It is contended the plaintiff was bound to look out for danger when the cars were backing, and by so looking he could have avoided the threatening danger from these standing cars on the same track.

One who engages in a hazardous employment assumes all risks incidental thereto; but is not bound to anticipate such dangers connected therewith, as arise solely from the negligence of others not in law his fellow-servants; and, therefore, his failure to foresee and guard against dangers of the latter class does not raise against him, nor his personal representatives, a presumption of contributory negligence. *Cleveland, C., C. & St. L. Ry. Co.* v. *Kernochan,* 55 Ohio St., 306.

It is clearly the law of Ohio, as settled by repeated adjudications of the Supreme Court, that "where the question of contributory negligence depends on a variety of circumstances, from which different minds may arrive at different conclusions as to whether there was negligence or not, the question ought to be submitted to the jury under appropriate instructions. And, "if the testimony be conflicting, the facts uncertain, or the proper inferences to be drawn therefrom doubtful, in such case it would be error for the court to withdraw the case from the jury, or direct them to return a particular verdict." *Marietta & C. Ry. Co.* v. *Pickley,* 24 Ohio St., 654; *Cleveland, C. & C. Ry. Co.* v. *Crawford,* 24 Ohio St., 631.

The law of the case being as we have indicated and believe it to be, when applied to the facts disclosed in this record, there is no error in the finding of the jury, nor is it contrary to law. And we think there is no error in the charge of the court as given, nor in refusing to charge as requested.

Judgment is affirmed.

*Dunbar & Sweeney,* for plaintiff in error.

*Erskine & Hollingsworth,* for defendant in error.